Frank GUINAN, Movant,

v.

STATE of Missouri, Defendant.

No. 70810.

Supreme Court of Missouri,
En Banc.

April 18, 1989.
Rehearing Denied May 16, 1989.

Thomas J. Marshall, Public Defender,
Moberly, for movant.

William L. Webster, Atty. Gen., Daryl L. Hylton, Asst. Atty. Gen., Jefferson City, for defendant.

WELLIVER, Judge.

Appellant Frank Guinan appeals from the trial court's denial of post conviction relief pursuant to Rule 27.26 following a sentence of death for first degree murder. *State v. Guinan*, 732 S.W.2d 174 (Mo.banc 1987). The trial court conducted an evidentiary hearing and made and entered findings of fact, conclusions of law, and entered judgment denying appellant's motion.

Our review of the hearing court's actions is limited to a determination of whether that court's findings, conclusions, and judgment are clearly erroneous. Such findings and conclusions are deemed clearly erroneous only if, after a review of the entire record, the appellate court is left with the "definite and firm impression that a mistake has been made." *Sanders v. State*, 738 S.W.2d 856, 857 (Mo.banc 1987). Finding no error, we affirm the judgment of the trial court.

Appellants allegations of error involve four areas; the ineffectiveness of his trial counsel, the errors of the trial court, certain statements made by the prosecutor, and the use of closed circuit television in his 27.26 hearing.

## I.  Ineffectiveness of Counsel

In reviewing appellant's allegations regarding his trial counsel, we focus on (1) counsel's performance, and, (2) whether prejudice resulted from counsel's alleged breach of duty. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1983). We need not determine whether counsel's performance was deficient before examining the prejudice prong. If it is easier to dispose of an ineffectiveness claim on the ground of lack of prejudice, that course should be followed. *Id.*, at 697, 104 S.Ct. at 2069–70. Our court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance..". *Id*, at 689, 104 S.Ct. at 2065. Appellant bears the burden of proving his

grounds by a preponderance of the evidence. *Stevens v. State*, 560 S.W.2d 599 (Mo.App.1978). Defendant's counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland, supra*, 466 U.S. at 690, 104 S.Ct. at 2066.

### A.  The Affidavit

Appellant's first allegation concerns an irreconcilable conflict between him and counsel. According to appellant, counsel signed an affidavit for the Attorney General's office relating to a civil suit appellant filed in the Federal Court. This affidavit allegedly violated appellant's trust in counsel, because it violated the loyalty requirement of an attorney-client relationship, and put counsel in conflict with his client.

■ The hearing court found that no affidavit surfaced at appellant's trial, and in fact no affidavit has ever surfaced in any proceeding, either this one or the Federal Court case for which it was allegedly prepared. The hearing court further found appellant proceeded to trial with no complaint about his counsel. An irreconcilable conflict exists when there is a total breakdown of communication between attorney and client. *State v. Smith*, 586 S.W.2d 399 (Mo.App.1979). This was not the case here.

### B.  Change of Venue

■ Appellant's next claim of error alleges counsel was ineffective for failing to pursue a change of venue motion filed prior to trial. Counsel testified at the hearing that his decision not to pursue the change of venue motion was due in part to the likelihood of the trial being moved to a county which had returned death penalties in cases that had been transferred to them. Counsel further testified that his decision was based upon the fact that several groups in Cole County actively oppose the death penalty, and are active in promoting the rights of prisoners. His decision not to pursue the motion was also based on his belief it would not be possible to draw a more favorable jury than in the county where crime in prison is "not a noteworthy

happening." The hearing court further found appellant had agreed to withdraw the motion after consideration of the above factors. We find no error.

### C. Psychiatric Examination

■ Appellant's next claim is that counsel was ineffective for failing to request a mental examination and failing to secure expert psychiatric testimony. Appellant ignores the facts as determined by the hearing court that counsel reviewed reports gathered on appellant from earlier cases, and had appellant examined by Dr. A.E. Daniels. Counsel reasonably concluded there was no evidence to support a belief of mental impairment, defect or disease.

Appellant presented no credible evidence at the hearing to support his claim. "Conjecture or speculation is not sufficient to establish the required prejudice." *Hogshooter v. State,* 681 S.W.2d 20, 21–22 (Mo. App.1984). We find no evidence of ineffective representation in this respect.

### D. Failure to Investigate Witnesses

■ Appellant's next claim alleges counsel was ineffective for failing to interview and investigate several inmate witnesses suggested by appellant, and for not calling them at trial. The witnesses were all death row inmates: Robert Driscoll, Robert O'Neal, Richard Zeitvogel, and Emmett Nave. The hearing court found all the witnesses had been interviewed either by counsel or members of the defense team. Counsel discovered in interviewing the witnesses that they wished to testify that appellant was acting in self-defense. Undisputed evidence at the trial showed the victim was handcuffed with his hands behind his back at the time of the stabbing. Counsel rejected the inmate's line of testimony for fear of incensing and exciting the jury. To establish ineffective assistance, Appellant has to establish the other witness's testimony would have provided Appellant with a viable defense. *Hogshooter, supra,* at 21. The hearing court properly concluded there was no proof of ineffective representation in this respect.

### E. Non–Attendance at the Second Phase

■ Appellant's next claim of error involves the punishment phase of the trial. Appellant argues counsel was ineffective in not requesting a recess after the guilt phase had ended. The jury returned a verdict of guilt on the evening of the second day of the trial, after which there was an evening session for determination of punishment. Appellant did not attend the punishment phase of the trial, and now claims this was due to illness. The trial judge and the prosecutor questioned appellant extensively about his desire to leave the punishment phase, and appellant's counsel repeatedly urged him to stay. In spite of all this, appellant chose to leave. There was no indication that during the trial appellant was ill. Counsel is not ineffective simply because he accedes to his client's wishes, regardless how mistaken counsel believes those wishes to be. *State v. Thomas,* 625 S.W.2d 115, 123 (Mo.1981).

### II. Alleged Trial Court Errors

Appellant's allegations of trial court error correspond in large part to the claims of ineffective assistance of counsel. Specifically, appellant argues 1) the trial court was in error for not removing counsel based upon the alleged conflict of interest, 2) not ruling on the change of venue motion, 3) allowing appellant to return to jail during the punishment phase of trial, 4) allowing evidence of a former murder committed by appellant to be presented to the jury in the punishment phase, and 5) allowing the prosecutor to make certain statements during the closing argument. Allegations 1, 2, and 3 are disposed of in Point I above.

Points 4 and 5 were decided against appellant in the direct appeal, and we will not again review them here. *Guinan, supra,* at 178.

### III. Closed Circuit Television Hearing

■ Appellant's final claim involves the use of two way closed circuit television in the post conviction hearing. Specifically appellant argues the use of the closed cir-

cuit television violated his right to confrontation, equal protection, due process and effective representation. Similar arguments were heard in *State ex rel. Turner v. Kinder,* 740 S.W.2d 654 (Mo.banc 1987). *Kinder* was a consolidated case involving three inmates, two who had been arraigned and one who had undergone preliminary examination conducted via audiovisual hookup between the courtroom in the Cole County Courthouse and the conference room in the Penitentiary. Section 546.030, RSMo 1986, provided that the person pleading guilty be "personally present". Section 544.250, RSMo 1986, prohibited an information from being filed charging a person with a felony unless the person received a preliminary examination "before some associate circuit judge". Section 544.270, RSMo 1986, provided that the associate judge before whom any person was brought shall proceed to examine the complainant and witnesses produced in support of the prosecution, on oath, in the presence of the prisoner on the offense charged. This Court in *Kinder* refused to expand the plain meaning of the statutes in question to include the use of audiovisual technology to satisfy the "in person" and "before an associate judge" statutory requirements where the legislature had not evidenced any intention of permitting such an expansion.

In response to *Kinder,* the General Assembly passed and presented to the Governor § 561.031, RSMo 1986, on March 1, 1988. It reads:

1. *In the following proceedings, the provisions of section 544.250, 544.270, 544.275, RSMo, 564.03 RSMo, or of any other statute, or the provisions supreme court rules 21.10, 22.07, 24.01, 24.02, 27.01, 29.07, 31.02, 31.03, 36.01, 37.16, 37.47, 37.48, 37.50, 37.57, 37.58, 37.59, and 37.64 to the contrary notwithstanding, when the physical appearance in person in court is required of any person held in a place of custody or confinement in any city not within a county or in any county in which there is located a place of custody or confinement operated by the department of corrections and human re-*

*sources, such personal appearance may be made by means of closed circuit television from the place of custody or confinement:* provided that such television facilities provide two-way audiovisual communication between the court and the place of custody or confinement and that a full record of such proceedings by made by split screen imaging and recording of the proceedings in the courtroom and the place of confinement or custody in addition to such other record as may be required:

(1) First appearance before an associate circuit judge on a criminal complaint;

(2) Waiver of preliminary hearing;

(3) Arraignment on an information or indictment where plea of not guilty is entered;

(4) Arraignment on an information or indictment where a plea of guilty is entered upon waiver of any right such person might have to be physically present;

(5) Any pretrial or posttrial criminal proceeding not allowing the cross-examination of witnesses;

(6) Sentencing after conviction at trial upon waiver of any right such person might have to be physically present;

(7) Sentencing after entry of a plea of guilty; and

(8) *Any civil proceeding other than trial by jury.*

2. This section shall not prohibit other appearances via closed circuit television upon waiver of any right such persons held in custody or confinement might have to be physically present.

(Emphasis added.)

A Rule 27.26 post-conviction proceeding is a civil proceeding, and the Sixth Amendment applies only during the pendency of the criminal case, not to the motion under Rule 27.26. *Williams v. State of Missouri,* 640 F.2d 140, 144 (8th Cir.1981), *cert. denied,* 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed. 2d 849 (1981); *State v. Edmondson,* 438 S.W.2d 237, 242 (Mo.1969). But, given the

quasi-criminal nature of the 27.26 hearing, we have examined the record and the tape and have fully satisfied ourselves that no constitutional violation is present.

Appellant was present, along with counsel and inmate witnesses, at the prison. The Judge, attorney for the State, and other witnesses were present in the Cole County Courthouse. They were connected by an audiovisual two way hookup. Appellant was represented by counsel, could present witnesses in his behalf, and could cross-examine the State's witnesses.

The hearing court complied with the terms of the statute by making and keeping a copy of the proceeding. In viewing the tape, we note the defendant was able to confer privately with his counsel, the cameras used provided a clear picture of the witnesses, examiners, and others present during the proceedings, and the cameras clearly and effectively conveyed both the text and the content of the testimony and the demeanor of the persons testifying. We find no diminution of our traditional standards of fair trial resulting from injecting the video cameras into the proceeding.

In *Kinder* I suggested:

Today split screen video appears to be an acceptable means of conducting the commercial business of the world, of conducting affairs between nations, of conducting political debate, of conducting the process of education, of communicating all forms of artistic pursuit, and for communicating to us the news of the world.

*Kinder, supra,* at 658 (Welliver, J. dissenting). We see no reason why video should not now be an acceptable means of conducting court business when done pursuant to the guidelines of § 561.031, RSMo 1986.

Having found no error in the findings or conclusions of the trial judge, the denial of appellant's Rule 27.26 post-conviction motion is affirmed.

All concur.