N. PATRICK CROOKS, J.
¶ 69. (concurring). Because I agree that the defendant was denied his constitutional right to effective assistance of counsel as a result of trial counsel's failure to present the eyewitness testimony of Cera Jones at trial, I join the majority opinion. However, I write separately to provide guidance on an issue of central importance not fully addressed by the majority in this case, namely, whether the circuit court properly scrutinized and weighed the credibility of Jones's testimony in applying the prejudice prong of the ineffective assistance of counsel test set forth in Strickland v. Washington, 466 U.S. 668 (1984). The propriety of the circuit court's decision in this regard presents an issue that was both briefed and argued before us.
¶ 70. As correctly noted by the majority, the test for determining whether a defendant received ineffective assistance of counsel is two-pronged. State v. Carter, 2010 WI 40, ¶ 21, 324 Wis. 2d 640, 782 N.W.2d 695 (citing Strickland, 466 U.S. at 687). The first prong requires the defendant to show that trial counsel's performance was deficient. Id. The second prong requires the defendant to prove that trial counsel's deficient performance prejudiced the defense. Id.
¶ 71. In discussing the issue of ineffective assistance, the circuit court focused on the credibility of Jones, in regard to the prejudice prong of the Strick *205 land analysis, rather than on the matter of deficient performance of the defendant's counsel.[1] The circuit court ultimately concluded that trial counsel was not ineffective for failing to call Jones to testify at trial. The circuit court reasoned that, even if trial counsel's failure to call Jones was deficient, such an unprofessional error did not prejudice the defendant because there was not a reasonable probability that Jones's testimony would have altered the outcome of the trial in light of her failure to come across as a credible witness.
¶ 72. The circuit court erred in discrediting Jones's testimony for two reasons. First, the general rule in Wisconsin is that issues of witness credibility and the weight to be given to their testimony are matters for the jury to decide. State v. Friedrich, 135 Wis. 2d 1, 16, 398 N.W.2d 763 (1987). Second, a defendant attempting to establish prejudice for purposes of an ineffective assistance of counsel claim need only show a reasonable probability that, but for counsel's unprofessional error, the outcome of the trial would have been different. State v. Thiel, 2003 WI 111, ¶ 20, 264 Wis. 2d 571, 665 N.W.2d 305 (quoting Strickland, 466 U.S. at 694). As to the latter point, "reasonable probability" does not mean "more likely than not." State v. Dyess, 124 Wis. 2d 525, 544, 370 N.W.2d 222 (1985) (citing Strickland, 466 U.S. at 693).
¶ 73. A proper application of the above legal principles to the facts of this case would require the circuit court to consider the following questions in assessing whether trial counsel's error in failing to call Jones prejudiced the defendant: (1) Was Jones's testimony within the realm of believability in light of the totality *206 of circumstances of the case?; and (2) Was Jones's testimony materially beneficial to the defendant's theory of the case?
¶ 74. Had the circuit court limited its inquiry to these questions, it would have correctly reserved questions as to the credibility and significance of Jones's testimony for the jury.
I.
¶ 75. A criminal defendant has a fundamental right to a trial by jury guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution. State v. Anderson, 2002 WI 7, ¶ 10, 249 Wis. 2d 586, 638 N.W.2d 301. Consistent with this fundamental right, Wisconsin law provides that it is ordinarily the task of a jury to decide both the credibility of a witness and the weight to be given to his or her testimony. Friedrich, 135 Wis. 2d at 16. This principle is confirmed by Wis JI — Criminal 300, which instructs,
It is the duty of the jury to scrutinize and to weigh the testimony of witnesses and to determine the effect of the evidence as a whole. You are the sole judges of the credibility, that is, the believability of the witnesses and of the weight to be given to their testimony.
¶ 76. While under certain circumstances it is possible for a circuit court to determine that a witness's testimony is incredible as a matter of law, it must be cognizant that "[e]ven though there be glaring discrepancies in the testimony of a witness at trial, or between his [or her] trial testimony and his [or her] previous statements, that fact in itself does not result in concluding as a matter of law that the witness is wholly *207 incredible." Ruiz v. State, 75 Wis. 2d 230, 232, 249 N.W.2d 277 (1977). Instead, "the question is whether the factfinder believes one version rather than another or chooses to disbelieve the witness altogether. Only a question of credibility ... is raised. That question [is] one for the jury." Id.; see also McFowler v. Jaimet, 349 F.3d 436, 454 (7th Cir. 2003) ("Inconsistencies in a witness's testimony are not unusual either, and normally these are left for the factfinder to assess."). A court should not substitute its judgment for that of the factfinder in this regard except where the evidence is inherently or patently incredible. Gauthier v. State, 28 Wis. 2d 412, 416, 137 N.W.2d 101 (1965), cert denied, 383 U.S. 916 (1966).
II.
¶ 77. The legal principle that it is normally the province of the jury to scrutinize and weigh the testimony of witnesses in criminal cases must apply when a circuit court is addressing the prejudice prong of a claim for ineffective assistance. See majority op., ¶ 64. Adhering to this legal principle in the context of ineffective assistance is entirely consistent with the test for determining prejudice set forth in Strickland.
¶ 78. As noted, the test for prejudice asks whether there is a reasonable probability that, but for counsel's unprofessional error, the result of the trial would have been different. State v. Domke, 2011 WI 95, ¶ 54, 337 Wis. 2d 268, 805 N.W.2d 364 (quoting Strickland, 466 U.S. at 694). In the context of a criminal conviction, " 'the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" Id. (quoting Strickland, 466 U.S. at 695). " 'A reasonable *208 probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694).
¶ 79. Importantly, in order to establish prejudice, a defendant need not show that counsel's unprofessional error more likely than not altered the outcome of the case. Dyess, 124 Wis. 2d at 544 (citing Strickland, 466 U.S. at 693). Thus, where a circuit court requires a defendant to convince the court as to the believability of an uncalled witness in order to establish prejudice, it not only ignores the role that a factfinder typically plays in determining the guilt or innocence of a defendant, it also imposes a heightened burden on the defendant that was expressly considered and rejected by the United States Supreme Court in Strickland.
¶ 80. Unfortunately, we have not specifically addressed the propriety of a circuit court's decision to scrutinize and weigh the credibility of an uncalled witness for purposes of assessing the prejudice prong of a claim for ineffective assistance. The result is that we have produced opinions reflecting somewhat inconsistent views on the topic.
¶ 81. For example, in State v. Vennemann, 180 Wis. 2d 81, 97, 508 N.W.2d 404 (1993), we briefly addressed the issue in a case involving a claim of ineffective assistance based on trial counsel's failure to call a witness. Specifically, we agreed with the circuit court's conclusion that the outcome of the trial would not have been different had the testimony of the uncalled witness been presented at trial because the uncalled witness "could have been easily impeached by other inconsistent testimony." Id.
¶ 82. Conversely, in State v. Guerard, 2004 WI 85, ¶ 49, 273 Wis. 2d 250, 682 N.W.2d 12, another case involving a claim of ineffective assistance based on trial *209 counsel's failure to call certain witnesses, we concluded that the defendant had satisfied his burden of establishing prejudice notwithstanding the "the strength of the victim's testimony and the existence of some inconsistency between [the victim's] testimony and [the exculpatory confession that was the subject of the uncalled witness' testimony]. . . ." Although the circuit court in Guerard had not made an explicit credibility determination with respect to the substance of the uncalled witness' testimony, as was the case in Vennemann, we nevertheless explained that it was the proper role of the jury to determine the weight and credibility to assign to the exculpatory confession at issue. Id.
¶ 83. When it comes to the correctness of a circuit court's decision to scrutinize and weigh the credibility of an uncalled witness for purposes of assessing prejudice in the context of ineffective assistance, Guerard provides the better approach. That is to say, Guerard's approach is more consistent with controlling legal principles in Wisconsin, whereas Vennemann's approach is not. Specifically, the court's discussion in Vennemann does not appear to contemplate that: (1) the well-established rule in Wisconsin is that witness credibility determinations in criminal cases are generally reserved for the jury;[2] and (2) reasonable probability for purposes of Strickland's prejudice prong does not require a defendant to show that it is more likely than not that a new trial would produce a different result.[3]
*210 ¶ 84. That Guerard provides the better approach toward dealing with a circuit court's ability to make credibility determinations in assessing prejudice for purposes of an ineffective assistance claim is confirmed by the United States Court of Appeals for the Sixth Circuit. In Ramonez v. Berghuis, 490 F.3d 482, 490 (6th Cir. 2007), the United States Court of Appeals for the Sixth Circuit held that a state circuit court erred in discrediting the testimony of three potential witnesses when assessing whether trial counsel's failure to investigate those witnesses prejudiced the defense, in violation of the defendant's constitutional right to effective assistance of counsel. The Ramonez court refused to defer to the circuit court's assessment as to the lack of credibility and helpfulness of the witnesses, reasoning in pertinent part that "our Constitution leaves it to the jury, not the judge, to evaluate the credibility of witnesses in deciding a criminal defendant's guilt or innocence." Id.
¶ 85. We have approved a similar approach to that of Guerard and Ramonez in addressing the standard for a "reasonable probability of a different outcome" in a case involving the recantation of a witness's testimony. In State v. McCollum, 208 Wis. 2d 463, 468, 561 N.W.2d 707 (1997), we considered the defendant's motion for a new trial based on newly discovered evidence: the victim's recantation of her accusation of sexual assault. In denying the defendant's motion, the circuit court determined that the victim's recantation was less credible than her accusation; as a result, the circuit court reasoned that the defendant had failed to establish a reasonable probability of a different result at a new trial. Id. at 474.
*211 ¶ 86. On review, we concluded that the circuit court "employed the wrong legal standard when determining that there was not a reasonable probability of a different outcome." Id. at 475-76. We explained that the proper standard asked whether there was a reasonable probability that a jury, looking at both the accusation and the recantation, would have a reasonable doubt respecting the defendant's guilt. Id. at 474. Accordingly, we were troubled by the circuit court's determination that a finding of "less credible" led to a conclusion of "no reasonable probability of a different outcome," because "less credible is far from incredible." Id. at 474-75.[4]
¶ 87. Thus, while we have not specifically addressed the propriety of a circuit court's decision to scrutinize and weigh the credibility of an uncalled witness for purposes of assessing prejudice in the context of ineffective assistance, I believe that Guerard and Ramonez are instructive in that they advocate an approach that most clearly comports with controlling legal principles in Wisconsin. That is to say, it is the jury's duty to resolve questions as to the credibility and significance of an uncalled witness's testimony. See majority op., ¶¶ 64-65.
III.
¶ 88. Because there are instances in which a circuit court can properly determine that a witness's testimony is incredible as a matter of law, I cannot advocate a bright-line rule wherein a circuit court must *212 always conclude that a defendant was prejudiced by his or her counsel's failure to call a particular witness at trial. Rather, the better approach is for a circuit court to consider the following questions when evaluating prejudice for purposes of an ineffective assistance claim: (1) is the uncalled witness's testimony worthy of belief in light of the totality of circumstances of the case?; and (2) is the uncalled witness's testimony materially beneficial to the defendant's theory of the case?
¶ 89. As to the former inquiry, the circuit court should simply ask whether the uncalled witness's testimony has any indicia of credibility in light of the evidence presented at trial.[5] In answering this question, the fact that the circuit court may be troubled by inconsistencies in the uncalled witness's testimony is not necessarily of any import. The existence of inconsistencies in a witness's testimony does not normally lead to a finding that the testimony is incredible as a matter of law; rather, the existence of discrepancies ordinarily creates a credibility question for the jury to resolve. Ruiz, 75 Wis. 2d at 232.
¶ 90. As to the latter inquiry, the circuit court should simply consider whether the proposed testimony would be helpful to the defendant's trial strategy such that, if the jury were to believe the proposed testimony, it would likely have a reasonable doubt respecting the defendant's guilt.
*213 IV
¶ 91. If the circuit court had applied the above approach to the facts of this case, then it would have properly reserved questions as to the credibility and the weight of Jones's testimony for the jury to resolve.
¶ 92. First, it is clear that Jones's eyewitness testimony was within the realm of believability in light of the totality of circumstances of this case.[6] As the majority explains, the only direct evidence that the state had to link the defendant to the shooting was the eyewitness testimony of the victim, Toy Kimber. Majority op., ¶ 18. As a result, the case boiled down to a credibility determination between Kimber and the defendant.
¶ 93. It is important to note that Kimber originally told police that he did not know the identity of the person who shot him. It was not until the next morning that Kimber identified the defendant as the shooter upon seeing the defendant's picture in a photo array. The record reflects that Kimber had known the defendant for at least three years and that there was a history of disputes between people living around North 45th Street, including Kimber, and people living around North 38th Street, including the defendant. The record also indicates that Kimber had five adult convictions and four juvenile adjudications and that Kimber changed his story at trial with respect to his identification of the shooter on the night in question.
¶ 94. In comparison, Jones, the only other eyewitness to the shooting, did not have an extensive criminal record. By all accounts, Jones appeared to be a neutral *214 eyewitness to the shooting. She was neither a victim of the shooting, nor was she someone who possessed a familial or romantic relationship with the defendant, as she testified. That there may have been inconsistencies in Jones's testimony should not have rendered her testimony unworthy of belief, particularly in light of Kimber's own inconsistent statements and the fact that the state had little evidence that directly linked the defendant to the shooting. Questions as to the credibility and the weight to be given to Jones's testimony should have been left for the jury to answer.[7]
¶ 95. Second, it is evident that Jones's eyewitness testimony was materially beneficial to the defendant's theory of the case. The defendant's trial strategy was two-fold: (1) attack the credibility of the victim eyewitness, Kimber; and (2) provide an alibi for the defendant. As to the former, it is clear that Jones's testimony would have helped undermine Kimber's identification of the defendant as the shooter. She would have testified that she knew the defendant from the neighborhood and that the defendant was not the shooter. She would have further testified that she did not identify the defendant to police officers upon viewing a photo array and that she told police officers the shooter had a smooth baby face, a feature that the defendant did not possess. As to the latter, Jones's testimony would have helped support the defendant's alibi defense: she would have testified that she saw the defendant across the street from the shooting minutes after the shooting occurred, which is consistent with the defendant's alibi theory. Thus, Jones's testimony, if believed by the jury, would likely have created a reasonable doubt respecting the defendant's guilt.
*215 V
¶ 96. Because I agree that the defendant was denied his constitutional right to effective assistance of counsel, I join the majority opinion. However, I write separately to fully address the impropriety of the circuit court's decision to scrutinize and weigh Jones's testimony in assessing prejudice for purposes of the defendant's claim of ineffective assistance. Because the general rule in Wisconsin is that witness credibility determinations in criminal cases are for the jury to decide, and because the test for establishing prejudice in the context of ineffective assistance does not require a defendant to establish that trial counsel's error more likely than not altered the outcome of the case, the circuit court erred in discrediting Jones's testimony. The circuit court's inquiry regarding prejudice should have been limited to the following questions: (1) was Jones's testimony within the realm of believability in light of the totality of circumstances of the case?; and (2) was Jones's testimony materially beneficial to the defendant's theory of the case?
¶ 97. Had the circuit court limited its inquiry to the aforementioned questions, it would have correctly reserved questions as to the credibility and significance of Jones's testimony for the jury.
¶ 98. For the reasons stated, I respectfully concur.

 The record is clear that the circuit court made no findings of fact — credibility or otherwise — -with respect to trial counsel's deficient performance.

 See, e.g., State v. Friedrich, 135 Wis. 2d 1, 16, 398 N.W.2d 763 (1987) ("The credibility of witnesses and the weight given to their testimony are matters left to the jury's judgment.").

 State v. Pitsch, 124 Wis. 2d 628, 641, 369 N.W.2d 711 (1985) (explaining that, in establishing prejudice in the context of an ineffective assistance of counsel claim, a defendant need *210 not demonstrate that counsel's deficient error more likely than not altered the outcome of the trial.).

 The McCollum concurrence suggested that, when faced with a recantation and an accusation, "[t]he circuit court does not determine which of the two statements is more credible; the circuit court is not to act as a thirteenth juror." State v. McCollum, 208 Wis. 2d 463, 490, 561 N.W.2d 707 (1997) (Abrahamson, C.J., concurring).

 This type of threshold inquiry pays tribute to the "reasonable probability" language of the test for determining prejudice set forth in Strickland v. Washington, 466 U.S. 668, 694 (1984), while not imposing a more heightened burden upon the defendant than that contemplated by the United States Supreme Court in Strickland.

 The circuit court never made an explicit finding that Jones's testimony was incredible as a matter of law. See majority op., ¶ 31 n.9.

 Indeed, the State conceded this point at oral argument.